18 U.S. 192 (____)
5 Wheat. 192
OWINGS
v.
SPEED et al.
Supreme Court of United States.

March 13th, 1820. This cause was argued by B. Hardin, for the defendants; no counsel appearing for the plaintiff.
*193 March 16th. MARSHALL, Ch. J., delivered the opinion of the court.
This was an ejectment, brought by the plaintiff in the circuit court of the United States for the district of Kentucky, to recover a lot of ground lying in Bardstown. *This town was laid off in 1780, on a tract of land, consisting [*421 of 1000 acres, for which, in 1785, a patent was issued by the commonwealth of Virginia to Bard and Owings. In 1788, the legislature of Virginia passed an act, vesting 100 acres, part of this tract, in trustees, to be laid off in lots, some of them to be given to settlers, and others to be sold for the benefit of the proprietors. The cause depends, mainly, on the validity of this act. It is contended to be a violation of that part of the constitution of the United States, which forbids a state to pass any law impairing the obligation of contracts.
Much reason is furnished by the record, for presuming the consent of the proprietors to this law: but the circuit court has decided the question independently of this consent, and that decision is now to be reviewed.
Before we determine on the construction of the constitution in relation to a question of this description, it is necessary to inquire, whether the provisions of that instrument apply to any acts of the state legislatures which were of the date with that which it is now proposed to consider. This act was passed in the session of 1788. Did the constitution of the United States then operate upon it?
In September 1787, after completing the great work in which they had been engaged, the convention resolved that the constitution should be laid before the congress of the United States, to be submitted by that body to conventions of the several states, to be convened by their respective legislatures; *and expressed the opinion, that as soon as it should be ratified [*422 by the convention of nine states, congress should fix a day on which electors should be appointed by the states, a day on which the electors should assemble to vote for president and vice-president, "and the time and place for commencing proceedings under this constitution." The conventions of nine states having adopted the constitution, congress, in September or October 1788, passed a resolution, in conformity with the opinions expressed by the convention, and appointed the first Wednesday in March of the ensuing year, as the day, and the then seat of congress, as the place, "for commencing proceedings under the constitution."
Both governments could not be understood to exist at the same time. The new government did not commence, until the old government expired. It is apparent, that the government did not commence on the constitution being ratified by the ninth state; for these ratifications were to be reported to congress, whose continuing existence was recognised by the convention, and who were requested to continue to exercise their powers, for the purpose of bringing the new government into operation. In fact, congress did continue to act as a government, until it dissolved on the first of November, by the successive disappearance of its members. It existed potentially, until the 2d of March, the day preceding that on which the members of the new congress were directed to assemble.
The resolution of the convention might originally *have suggested [*423 a doubt, whether the government could be in operation, for every purpose, before the choice of a president; but this doubt has been long solved, and were it otherwise, its discussion would be useless, since it is apparent, *194 that its operation did not commence before the first Wednesday in March 1789, before which time, Virginia had passed the act which is alleged to violate the constitution.
In the trial of the cause, the defendant produced a witness to prove that the lot for which the suit was instituted, was a part of the 100 acres vested in trustees by the act of assembly. To this testimony, the plaintiff objected, because the witness stated, that he had sold a lot in Bardstown, with warranty, and was in possession of another. He added, that no suit had been brought for the said lot, and that he was not interested in this suit. The court admitted the witness, and to this opinion also, a bill of exception was taken. It is so apparent, that the witness had no interest in the suit in which he was examined, and it is so well settled, that only an interest in that suit could affect his competency, as to make it unnecessary to say more, than that the court committed no error in permitting his testimony to go to the jury.
There was also an exception taken to the opinion of the court, in allowing the book of the board of trustees, in which their proceedings were recorded, and other records belonging to the corporation, to be given in evidence. The book was proved by the present clerk, who also proved the handwriting *424] of the first clerk, and of *the president who were dead. The trustees were established by the legislature for public purposes. The books of such a body are the best evidence of their acts, and ought to be admitted whenever those acts are to be proved. There was no error in the opinion admitting them. There is the less necessity in this case for entering more fully into this question, because the record contains other evidence of the facts, which the testimony, to which exceptions were taken, was adduced to prove.
Judgment affirmed, with costs.